SARAH A. COLE v. THE LAKE SHORE & MICHIGAN
SOUTHERN RAILWAY COMPANY.

[See 69 Mich. 363.]

*Negligence—Railroad companies—Defective way to and from station
grounds—Evidence—Failure of party to be sworn
in his own behalf.*

1. The law as laid down in *Cross v. Railway Co.*, 69 Mich. 363, in
regard to the degree of care required of railroad companies in
providing suitable and safe ways to and from their station
grounds, is held to govern this case.[1]

2. Where a party who is not called as a witness in his own behalf
possesses knowledge of the facts in controversy unknown to
others who are called as witnesses, which facts would supply
positive evidence of what must otherwise be established by
inference from other facts proven, and upon which inference
he relies, a presumption arises that the facts within his knowl-
edge would, if produced, be harmful to him, which presump-
tion may be rebutted by a satisfactory explanation of the
absence of the party, or of the failure to take his deposition.

So *held*, in a negligence case, where the plaintiff was not
produced as a witness, and refused to submit to a medical
examination at her residence by defendant's physicians. On
the trial she attempted to establish her case by showing that
she fell into a hole on defendant's premises, and was hurt, as
she then claimed, and by the testimony of a physician, upon
whom she called for treatment about a week after the acci-
dent, as to her *then* physical condition. She also introduced
testimony tending to show that she was in the enjoyment of
good health before the accident, and that afterwards she lost
flesh and seemed to be in ill health, but offered no testimony
to prove that her ill health was the result of any injury she
received from the fall, leaving this question of fact to be
inferred by the jury from the facts proved which tended to
establish it. Testimony was introduced by the defendant tend-
ing to show that plaintiff complained of ill health, on account
of "female weakness," before the accident, and physicians
called by the defendant testified that the ailments described by

[1] See *Collins v. Railway Co.*, 80 Mich. 390.

her attending physician were as attributable to other causes as to a fall or blow. And it is held that the plaintiff alone could supply positive testimony upon that point, and that, if she was not able to appear in court, her deposition could have been taken; that, while her counsel were not obliged to do this, yet, failing so to do, they must submit to the presumption that, if she had testified, such testimony would have been unfavorable to her, which presumption, while not conclusive, was for the consideration of the jury as bearing upon the merits and the good faith of her cause of action.

3. Two persons claimed to have been injured by the same accident. One brought suit and recovered a judgment, and on the subsequent trial of the suit brought by his companion he testified as a witness in her behalf. He had a power of attorney to manage her case, and, in case a judgment was recovered, was to receive a portion of the money for his trouble. On the cross-examination of this witness the defendant asserted as its theory that neither of the persons had been in fact injured, but had conspired to extort money from the defendant by bringing such suits, and, by giving false testimony, to establish their claims. And it is held that, in view of such theory, testimony was admissible on the part of the plaintiff showing the claim of the plaintiff at the time of the accident that she was hurt; and that defendant's counsel had the right, on *such* cross-examination, to inquire fully whether the witness was not lame previous to the accident by which he claimed his leg was injured, and also to show by another witness what *said* witness said about not wishing the plaintiff to attend the trial of *his* suit, and what she said concerning a letter received from him about *his* suit, and said about what he swore to on the trial.

Error to Washtenaw. (Kinne, J.) Argued April 30, 1890. Decided June 6, 1890.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Weaver & Bean (George C. Greene* and *O. G. Getzen-Danner,* of counsel), for appellant.

*Sawyer & Knowlton,* for plaintiff, contended:

1. Since the statute making all parties witnesses, either party may compel the opposite party to testify; citing *Riopelle v. Doellner,*

26 Mich. 102, 105; *Montague v. Dougan*, 68 Id. 98; but we do not understand that the statute compels either party to attend and be sworn in his own behalf unless he so desires. And it was held in *Cross v. Railway Co.*, 69 Mich. 369, that we were under no obligation to call Mrs. Cole.

2. We do not question the power of the court in any proper case to order a personal examination of a party claiming damages for personal injuries. But that was not the purpose of the examination in this case. It was simply to see whether plaintiff was able to attend court. But where an examination is proposed for the purpose first named, there must be an application to the court for an order therefor; and whether an examination of the injury received shall be had or not rests in the sound discretion of the court; citing *White v. Railway Co.*, 61 Wis. 536.

3. Error is assigned on the refusal to retry the Cross case. No effort was made to show him unworthy of credit, but simply to show that he got damages in his suit by swearing to an injury he had not sustained. Defendant was allowed the greatest latitude in attacking his credibility on cross-examination, but whether Cross got hurt or not in his fall was not material in this suit. If a witness is cross-examined upon a collateral or immaterial matter, evidence will not be admitted to disprove that matter in order to discredit the witness; citing *Dunn v. Dunn*, 11 Mich. 284; *Fisher v. Hood*, 14 Id. 189; *Hamilton v. People*, 29 Id. 173; *Hitchcock v. Burgett*, 38 Id. 501; *Driscoll v. People*, 47 Id. 413.

4. Not only was the testimony of Milligan to the statement of Mrs. Cole that she was hurt a part of the *res gestæ*, and therefore competent (citing *Stewart v. Brown*, 48 Mich. 383; *People v. Simpson*, Id. 474; *Joslin v. Coal Co.*, 53 Id. 322; *Keyser v. Railway Co.*, 66 Id. 390), but since *Hyatt v. Adams*, 16 Id. 180, the rule is settled in this State that exclamations of pain, and descriptions of present physical suffering, are admissible as original testimony; citing *Johnson v. McKee*, 27 Mich. 471, 473; *Railroad Co. v. Huntley*, 38 Id. 543; *Cleveland v. Newsom*, 45 Id. 62; *Mayo v. Wright*, 63 Id. 32, 40.

CHAMPLIN, C. J. The plaintiff recovered a judgment in the court below, and the defendant brings the case here by writ of error. I quote from the opening sentence of the brief of defendant's counsel as follows:

" This case is the companion piece of the case of George A. Cross against the same defendant, brought to this

Court by the defendant, the judgment in which was affirmed at the April term, 1888, and reported in 69 Mich. 363."

Counsel has presented an elaborate brief, and in his argument urges us to review the law as laid down in that case, and adopt the principles of a line of authorities holding railroad companies to a less degree of care in providing suitable and safe ways to and from their station grounds.[1] But, while yielding due respect to the authorities cited, and to the able argument of the learned counsel, we adhere to our former ruling, convinced, as we are, that it is both reasonable and right. The law of that case must govern its "companion piece," and calls for an affirmance of the judgment unless error has been committed in the reception or exclusion of testimony; and we will address ourselves to the assignments of error relating to that subject.

In the case of *Cross v. Railway Co.*, a point was made that Mrs. Cole was not produced as a witness, and the failure to do so was the ground of a request to charge. In this case, in which she is plaintiff, she did not appear in court upon the trial; and the defendant again complains that she did not appear and testify in her own behalf, so that the defendant's counsel could have the benefit of a cross-examination.

We do not think a party is obliged to tender himself as a witness in his own behalf. There are cases, however, when the circumstances may be such that if he does not do so the jury may be at liberty to draw unfavorable inferences from such fact. It has been held frequently that where the witness' testimony would be of vital

[1] Counsel cited Cooley, Torts, 605–607; *Bancroft v. Railroad Corporation*, 97 Mass. 275; *Railroad Co. v. Coleman*, 28 Mich. 440; *Murch v. Railroad Corporation*, 29 N. H. 40; *Forsyth v. Railroad Co.*, 103 Mass. 513; *Moreland v. Railroad Corporation*, 141 Id. 31; *Penn. Co. v. Marion*, 104 Ind. 239; *Murray v. McLean*, 57 Ill. 378; *Armstrong v. Medbury*, 67 Mich. 250.

importance in the case,—as, for example, if he were the only eye-witness of the facts,—an unfavorable inference by the jury is warranted, especially if the adverse party has no legal right to call the witness. *State v. Rodman*, 62 Iowa, 456; *Rice v. Com.*, 102 Penn. St. 408; *The Fred M. Laurence*, 15 Fed. Rep. 635. The last case was a libel against the vessel in the court of admiralty, and was where either party could have called the witness; but the libelant neglected to call him, nor was any excuse for his non-production given; and as he was an eye-witness, and could have made certain what appeared uncertain, the presumption was allowed weight that his testimony would have been unfavorable to the libelant, and his libel was dismissed. *Bleecker v. Johnston*, 69 N. Y. 309, was a civil case. An action was brought for an alleged breach of a contract of employment against two defendants who were copartners. The plaintiff was the only witness to support his claim. Only one of the defendants was called as a witness, and his testimony directly conflicted with that of the plaintiff. It appeared that the other defendant was present at the time of the hiring, but was not called as a witness. The trial court instructed the jury as follows:

"It is the duty of every party, in presenting their case before the jury, to produce every witness who can convey any light to the jury which will aid them in considering the evidence; and when a witness is within reach, and whose evidence could be produced, they have a right to infer that the non-production of the witness is caused by the fact that his evidence would not be beneficial to the party who was bound to produce him."

This ruling was affirmed at the general term. In the court of appeals, Allen, J., said:

"The non-attendance of the absent defendant at the trial may have been a proper subject of remark and for consideration by the jury; and if they, under all the circumstances, thought his absence suspicious, they might

take a less favorable view of the testimony on the part of the defense; but this was the extent to which the plaintiff was entitled to any benefit from the circumstance."

He also said:-

" The mere omission of a party to a civil action to call a witness who, at the most, has no other or better knowledge of the matter in dispute than those who are produced and give evidence, is not necessarily suspicious, entitling the adverse party to every presumption to his prejudice."

I fully agree with this statement of the principle which should govern the production of evidence. In that case the absent witness had no more or better knowledge of the fact in issue than the witness who was sworn. There was no fact sought to be established by inference from other facts proved of which the absent witness had knowledge, and the witnesses sworn had not. The plaintiff in a civil case may establish his cause of action by proof of facts, and by inferences from facts proved; but, if he omits to call witnesses, whom he can procure, who have positive knowledge of the facts which he seeks to establish by inferences, he does so at his peril.

I think the correct and reasonable rule is this: Where a party not called as a witness in his own behalf possesses knowledge of the facts in controversy unknown to others who have been called as witnesses, and such facts would supply positive evidence of what would otherwise be established by inference from other facts proven, then there is a presumption that the facts in the knowledge of the party not produced would be, if produced, harmful to the party relying upon such inference. Such presumption may be rebutted by any satisfactory explanation why such party is not produced, or his deposition taken. But the mere omission of a party to call a witness, other than the party himself, who might with equal propriety

have been called by the other party, is no ground for a presumption that the testimony of the witness would have been unfavorable. *Scovill v. Baldwin*, 27 Conn. 316; *Cross v. Railway Co.*, 69 Mich. 369.

Counsel for defendant claim that they had a right to suppose that Mrs. Cole would be produced at the trial in her own behalf; that all the facts entitling her to recover were within her own knowledge, and in not appearing and giving her testimony she was guilty of suppressing testimony; and they framed certain requests, which the court refused to charge, based upon that theory. Counsel for plaintiff, in opening the case to the jury, announced that the plaintiff would not be present on account of sickness and inability to attend, which defendant's counsel claimed was a surprise to them; and they asked for a continuance. The court gave them time to prepare a showing, but intimated that, if defendant had desired her presence as a witness, process of subpœna was open to it, and she was within reach of subpœna. Counsel for plaintiff then said:

"I now offer to counsel that if they will send their expert physicians, that they say they want to examine this witness, down to Hillsdale, they have abundance of time to inspect the woman, and come back here, before this trial shall close; and I now offer, if it shall happen that they cannot return before this trial would naturally close, to continue this case until Monday morning, so that they may have their witnesses here."

This offer was, after a recess, and consultation among defendant's attorneys, accepted. This was on Friday, December 6, 1888. On that day, Mr. A. J. Sawyer, one of the counsel for plaintiff, wrote a letter as follows:

"Ann Arbor, Dec. 6, 1888.
"The L. S. & M. S. Railway Company desire to have their doctors see you, and I consent they may do so. You are under no obligations, however, to submit to any inspection of your person which involves any delicacy,

nor are you required to answer any question. You are not a witness, and are not obliged to answer any question they ask you unless you see fit to.

"A. J. SAWYER."

This letter he gave to Mr. Bean, one of defendant's counsel, who was to go to Hillsdale and get the physicians to make the examination the next day. It appears that Sawyer also dispatched one Sydney Milligan, a witness in attendance at the trial, with a verbal message to Mrs. Cole not to answer any question unless she saw fit. He left the place of trial that evening, and drove to Milan, and from there went on the cars to Pittsford, to see Mrs. Cole, at the request of Mr. Sawyer. He delivered his message, and Mrs. Cole requested him to be present, and remain in the room, when the doctors came. He met the doctors (Messrs. Everett, Whelan, and Werner) and Mr. Bean at the depot, and followed them to Mr. Whitbeck's, where Mrs. Cole was staying. The interview amounted to nothing. She refused to be examined, and refused permission of the doctors to examine her pulse. Milligan also forbade the examination. The defendant introduced several witnesses tending to show that Mrs. Cole was able to be around up to the day of the visit, and appeared as well as she had for two or three years; and, in reply to a question put by one of the physicians as to the length of time she had been in bed, she said that she had been in bed since last night.

The course taken by plaintiff's counsel to establish her case was this: Her counsel first introduced evidence of the situation and condition of the premises, then, by the testimony of the witness Cross, showed that she fell into the hole at the end of the culvert immediately after he did,—at the same time; that he fell first, and she fell in, head foremost, after him; that, in attempting to get out,

she fell again, backward; that at the time she complained of being hurt.    Counsel then showed by Mrs. Whitbeck, a physician residing at Pittsford, that about a week after the accident the plaintiff called upon her for treat_ ment; that she made a personal examination, and found the patient afflicted with a retroversion of the *uterus,* attended with inflammation and exudation, etc., and other ailments which she described.    She was asked:

" *Q*. What would produce that condition that you found her in?

" *A*. Falls; blows; over exertion at the menstrual periods.

" *Q*. What do you think the effect would be upon a patient, in her condition of life, to take a sudden fall of two feet, or such a matter, striking upon her back as she fell?

" *A*. I think it would produce exactly the condition that I found there."

Counsel for plaintiff also introduced testimony tending to show that before the accident, as alleged, the plaintiff was in the enjoyment of good health, and after it she lost in flesh, and appeared to be in ill health.    They introduced no direct testimony to prove that her bad condition was the result of any injury she received by falling into the excavation at the end of the culvert, but left this question of fact to be inferred by the jury from the facts proved which tended to establish that fact.    The defendant's counsel introduced testimony tending to show that plaintiff complained of ill health on account of "female weakness—female trouble"—before the accident alleged, and also the testimony of physicians tending to show that the ailments testified to by Dr. Whitbeck were as attributable to other causes as to a fall or blow.    The plaintiff herself then knew, and she was the only person who did know, whether the condition which Dr. Whitbeck described her to be in was occasioned by an injury received by falling into the hole described in the declara-

tion.    She alone could supply positive testimony upon
that* point; and, if she was not in a state of health to
appear personally in court, her counsel could have taken
her deposition, had they desired, preparatory to the trial.
It is true they were not obliged to do so; but, under the
circumstances surrounding this case, if they did not do
so, they must submit to the presumption that, if she had
testified, such testimony would have been unfavorable to
her.    Such presumption is not conclusive against her
right to recover, but it was a presumption which the
jury had a right to consider and weigh as bearing upon
the merits and good faith of her cause of action, with the
other testimony in the case.    The substance of the six-
teenth and twentieth requests of counsel for defendant
should have been given; and the refusal to do so was error.[1]

It appeared upon the trial in the court below that
George A. Cross, the principal witness for the plaintiff
in this case, was the plaintiff in the case of Cross
against this company, reported in 69 Mich. 363; that,
after he had prevailed in that case, he furnished rooms
for Mrs. Cole to live in, and hired apartments in which
Mrs. Cole lived for a time with Mr. Cross' father, who
was an aged gentleman and an invalid; that she did the
work in taking care of him while he lived with her; that
he had received from Mrs. Cole a power of attorney to
carry on this suit, had hired the attorneys, attended to
the procuring of the witnesses, and had general manage-

---

[1] "16. The absence of Mrs. Cole at the time of this trial is a circum-
stance that may be considered by the jury, and, if not explained
to the satisfaction of the jury, should be taken as a circumstance
against her, and as indicating that if she had been present, and
testified as a witness in her own behalf, her evidence, in whole or
in part, would have tended to weaken her case."

"20. Under the circumstances as shown by the proofs in this
case, the failure to call said plaintiff as a witness, and to have her
give testimony as to the alleged accident, and her injuries there-
from, or to have taken her deposition in relation thereto, and to
have read the same to the jury in this cause, is a suspicious cir-
cumstance against her."

ment of the suit; that he was to receive out of the amount recovered from the railroad company the money paid out for expenses, and a share of the money recovered for his trouble, although no definite sum had been agreed upon. It was the theory of defendant railroad company that Cross and Mrs. Cole had neither, in fact, been injured, but had entered into a conspiracy to extort money from the company by setting up a claim that they had been injured, and bring suit therefor, and, by giving false testimony, endeavor to establish their claim. In view of this theory, asserted early in the trial, upon the cross-examination of Cross, the testimony of Milligan, offered in behalf of the plaintiff, that he was near the culvert on the night of the alleged accident, and heard a gentleman ask somebody else if she got hurt, and heard her reply: "Yes; it has hurt. It has hurt my back," was admissible. We are of opinion, also, in view of that theory, that it was admissible for counsel for defendant to inquire fully of Cross as to whether he was not lame previous to the time he claimed to have received the injury to his leg in falling into the hole with Mrs. Cole. It should have been admitted under defendant's theory, because it was material, and not because, as the circuit judge announced, it was the "shortest way to get rid of it."

The court allowed considerable latitude to defendant's counsel in his effort to prove a conspiracy. We agree with him that the testimony offered to prove in a general way that Mrs. Cole defrauded the government in receiving a pension after she had married a man by the name of Allen was raising a collateral issue not material to this case. Counsel announced that he intended to prove that Cross entered into a conspiracy with Mrs. Cole to defraud the government of pension money, but the testimony offered for that purpose did not tend

to prove such conspiracy, and it was rightly excluded.

In view of Cross' relation to these suits, I think defendant was entitled to show what Cross said about not wanting Mrs. Cole to attend the trial of his suit, and what Mrs. Cole said about a letter received from Cross about his trial, and as to what Mrs. Cole said about what he swore to. All this testimony was admissible upon defendant's theory.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.